Nathaniel K. Charny (NC 5664)
H. Joseph Cronen (HC 4814)
Charny & Wheeler P.C.
42 West Market Street
Rhinebeck, New York 12572
Tel - (845) 876-7500
Fax - (845) 876-7501
ncharny@charnywheeler.com
jcronen@charnywheeler.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHERINE DOYLE,<br><br>         Plaintiff,<br><br>   v.<br><br>AMERICAN GLORY RESTAURANT CORP., and JOSEPH FIERRO, individually and in his official capacity,<br><br>         Defendants. | COMPLAINT<br><br>Civil Action No.<br><br>JURY TRIAL DEMANDED |

1.  Plaintiff complains, upon knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, as follows.

NATURE OF THE CASE

2.  Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the New York State Human Rights Law ("NYSHRL"), New York State Executive Law § 290, *et seq.* Plaintiff seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of Plaintiff's sex/gender (female) and retaliated against and terminated by Plaintiff's employers solely for objecting to discrimination.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is proper pursuant to 42 U.S.C. §§ 12117 and 2000e-5.

4. This Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district pursuant to 42 U.S.C. §§ 12117 and 2000e-5, as it is a judicial district in the state (New York) in which the unlawful employment practices are alleged to have been committed.

## PROCEDURAL PREREQUISITES

6. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

7. Plaintiff received a Notice of Right to Sue ("Notice") from the EEOC with respect to these charges of discrimination.

8. This Action is being commenced within ninety (90) days of receipt of the Notice.

## PARTIES

9. At all times material, Defendant American Glory Restaurant Corp. ("American Glory") was a domestic business corporation operating in and existing under the laws of the State of New York.

10. At all times material, Defendant American Glory was engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e.

11. At all times material, Defendant American Glory had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

12. At all times material, Defendant American Glory was Plaintiff's employer under Title VII.

13. At all times material, Defendant American Glory was Plaintiff's employer under the NYSHRL.

14. At all times material, Defendant Joseph Fierro was an employee of Defendant American Glory.

15. At all times material, Defendant Fierro was Plaintiff's supervisor and had supervisory authority over Plaintiff.

16. At all times material, Defendant Fierro had the power to hire, fire, demote, promote, directly affect the terms and conditions of Plaintiff's employment, and direct Plaintiff's daily work activities.

17. Upon information and belief Defendant Fierro resides in New York County.

## MATERIAL FACTS

18. In or around October or November of 2020, Plaintiff began her employment with Defendant American Glory by working a number of bartending shifts at its restaurant located in Hudson, New York (the "Restaurant").

19. On or around April 12, 2021, Plaintiff started working fulltime as the "Captain" or "Day Manager" of the Restaurant.

20. Approximately a few weeks later, Plaintiff was promoted to Assistant General Manager.

21. From the beginning of her employment with the Restaurant until her last day there, Plaintiff was subject to disgusting, repulsive, and unwelcome hostility in the workplace based on sex/gender—especially as perpetrated by the Owner of the restaurant, Defendant Fierro (who calls himself the General Manager).

22. For example, on a daily basis Defendant Fierro would talk about female customers' breast in detail and made repeated comments about Plaintiff's breasts.

23. Defendant Fierro told Plaintiff to fire someone because she was pregnant but Plaintiff refused to do so, thereby objecting to Defendant Fierro's discriminatory behavior.

24. Plaintiff also told Defendant Fierro that terminating someone for being pregnant was both morally wrong and against the law.

25. Defendant Fierro would constantly comment about women, both employees and customers.

26. On one occasion, Defendant Fierro complained that a staff person "has an ugly tit" that he saw when it was inadvertently exposed briefly while the employee was bending over.

27. Immediately after this employee bent over Defendant Fierro screamed, further cruelly humiliating the employee who fled outside crying.

28. Defendant Fierro complained to Plaintiff repeatedly that he "could not get the image out of [his] mind."

29. Defendant Fierro told Plaintiff that he wanted the employee fired because he saw her breast.

30. Plaintiff said that he could not do so lawfully, thereby again objecting to Defendant Fierro's discriminatory conduct.

31. Plaintiff was outraged at the sexist and demeaning way in which Defendant Fierro treated this female employee.

32. Defendant Fierro also commented that a bride who was using the Restaurant for catering had "perfect melon tits."

33. Defendant Fierro constantly commented on Plaintiff's body, on a daily basis identifying the shape and size of her breasts.

34. For example, he frequently said Plaintiff had "big tits."

4

35. Defendant Fierro boasted about how many discrimination suits he had pending, and that they were unfounded because, for example, he touched a woman's "tit" and "she should have been happy since no one else wanted to touch "it."

36. Defendant Fierro also repeatedly remotely displayed pornography on the reservation tablet at the Restaurant and repeatedly and knowingly exposed multiple employees, including several that were minors, to this pornography.

37. Defendant Fierro was also openly racist and homophobic.

38. For example, when Plaintiff became Assistant General Manager she hired a gay African American male and four African American females.

39. Defendant Fierro responded by asking if Plaintiff was "hiring the whole hood of Hudson."

40. Defendant Fierro also complained that the Restaurant was "all black now."

41. Plaintiff was aghast at these outrageous comments.

42. Defendant Fierro also repeatedly stated that he was not comfortable having a gay employee, worrying that it might cause him to become gay, and that he found the idea of gay sex disgusting.

43. Defendant Fierro instructed Plaintiff to keep a gay male employee away from him as he did not want this person's "gayness" rubbing off on him.

44. Defendant Fierro also commented frequently about "nigger" boyfriends and said that women who had "nigger boyfriends" should be fired because their boyfriends were cocaine dealers and doing drugs in the bathroom.

45. Defendant Fierro would also make comments about disabled individuals—even children—by calling them "retards."

46. Plaintiff repeatedly objected to Defendant Fierro's bigotry in all of its forms, be it racist, sexist, ableist, or homophobic.

47. Defendant Fierro would respond to Plaintiff's objections to his discriminatory comments and conduct with fury.

48. For example, he would increase his sexist vitriol towards women in general and against Plaintiff in particular by increasing the frequency with which he used sex-/gender-based slurs such "bitch."

49. In other words, Defendant Fierro would use a hostile environment as a retaliatory weapon against Plaintiff.

50. At times he would completely ignore Plaintiff's presence.

51. He would also retaliate against Plaintiff for objecting to his cartoonishly bigoted and unlawful behavior by publicly questioning Plaintiff's competence in bad faith.

52. This retaliatory behavior was so aggressive, offensive, and menacing that a reasonable person in Plaintiff's position would have felt compelled to resign.

53. This retaliatory behavior was so aggressive, offensive, and menacing that it would dissuade a reasonable employee from objecting to Defendant Fierro's unlawful conduct.

54. These are all just examples. The gender/sex based hostility, bigotry, and retaliatory hostility was unrelenting when Plaintiff worked at the Restaurant.

55. Things were often worse when Defendant Fierro drank and became inebriated at the Restaurant—which happened frequently.

56. Things came to a head for Plaintiff in July 2021 when Plaintiff took a medical leave.

57. Plaintiff realized during this time away from the Restaurant that the extreme gender/sex based and retaliatory hostility in the workplace was causing her great mental anguish and

that she simply could not return to the workplace and allow herself to be subjected to the hostility.

58. Plaintiff decided not to return to the job because she determined that she had been constructively discharged.

59. Plaintiff's working conditions were so intolerable that a reasonable person Plaintiff's position would have felt compelled to resign.

60. As such, Defendants terminated Plaintiff.

61. Defendant Fierro's hostile work environment was open and apparent.

62. Upon information and belief, numerous other claims have been brought against Defendant Fierro on these same grounds.

63. Defendant Fierro contemptuously dismissed at least one claim against him, telling Plaintiff that it was ridiculous that he was being sued for telling racist jokes because they were just jokes and that the person suing him was just looking for money.

64. Defendant American Glory is subject to a "Consent Decree" entered in the Northern District of New York on September 29, 2021, under case number 1:20-cv-01184 (DNH/DJS) and docket number 20.

65. The Consent Decree resulted from a lawsuit filed by the EEOC against Defendant American Glory alleging that "Joseph Fierro, American Glory's owner and President, and other managers and employees repeatedly subjected Charging Party Anthony Dougherty and other Black employees to racist and derogatory comments and slurs and subjected female employees to sexual harassment, which included leering and crude sex-based comments."  (Consent Decree p. 1.)

66. The Consent Decree provides for, among other things, the following injunctive relief:

> 14. Defendant [American Glory], its managers, officers, agents, and any other person or entity acting on behalf of Defendant [American Glory], are hereby enjoined from engaging in or failing to prevent or correct unlawful harassment based on race and permitting, engaging in, or failing to prevent the use of racial slurs and racist comments.
>
> 15. Defendant [American Glory], its managers, officers, agents, and any other person or entity acting on behalf of Defendant [American Glory], are hereby enjoined from engaging in or failing to prevent or correct unlawful harassment based on sex and permitting, engaging in, or failing to prevent the use of unwelcome sexual comments.
>
> 16. Defendant [American Glory], its managers, officers, agents, and any other person or entity acting on behalf of Defendant [American Glory], are hereby enjoined from engaging in unlawful retaliation of any kind against any person because such person has opposed or complained of harassment, filed a charge of discrimination under Title VII, testified or participated in any manner in any investigation, proceeding, or hearing under Title VII, or asserted any rights under Title VII or this Decree, or because such person was identified as a possible witness in connection with this matter.

(Consent Decree ¶¶ 14-16.)

67. As described above, Defendant American Glory has not abided by the requirements of this Consent Decree.

68. Defendant American Glory knew or should have known of the discriminatory conduct and failed to take corrective measures within its control.

69. But for Defendant Fierro's position at American Glory, Defendant Fierro would not have been able to subject Plaintiff to the discriminatory treatment alleged above.

70. Plaintiff was repulsed, offended, disturbed, humiliated, and disgusted by this blatantly unlawful and retaliatory termination.

71. Defendants retaliated against Plaintiff because Plaintiff objected to Defendant Fierro's discriminatory and unlawful conduct.

72. Defendants created a hostile work environment which unreasonably interfered with Plaintiff's ability to perform Plaintiff's job.

73. Upon information and belief, Defendants would increase their sex/gender-based hostility to retaliate against Plaintiff for objecting to Defendants racist, sexist, and homophobic conduct.

74. The above are just some of the ways Defendants regularly and continually harassed, discriminated against, and retaliated against Plaintiff while employing Plaintiff.

75. Defendants treated Plaintiff this way solely due to Plaintiff's sex/gender (female) and/or because Plaintiff engaged in protected activity by objecting to Defendant Fierro's discriminatory conduct.

76. Defendants acted intentionally and intended to harm Plaintiff.

77. Defendants unlawfully discriminated against, retaliated against, humiliated, degraded, and belittled Plaintiff.  As a result, Plaintiff suffers loss of rights, emotional distress, and loss of income.

78. Plaintiff's performance was, upon information and belief, above average and satisfactory while working for Defendants.

79. Plaintiff was qualified for her position(s).

80. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of employment, income, the loss of a salary, loss of bonus, loss of benefits, other compensation which such employment entails, special damages, and great inconvenience.

81. Plaintiff has also suffered and will continue to suffer pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

82. Defendants acted maliciously, willfully, outrageously, and with full knowledge of the law.

83. As such, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

## FIRST CAUSE OF ACTION FOR DISCRIMINATION
## UNDER TITLE VII

84. Plaintiff restates the foregoing allegations.

85. Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C. § 2000e–2(a), titled "employer practices," provides that:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

86. Defendant American Glory violated the section(s) cited as set forth.

## SECOND CAUSE OF ACTION FOR RETALIATION
## UNDER TITLE VII

87. Plaintiff restates the foregoing allegations.

88. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

89. Defendant American Glory violated the section(s) cited as set forth.

10

## THIRD CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK STATE EXECUTIVE LAW

90. Plaintiff restates the foregoing allegations.

91. New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

92. Defendants violated the section(s) cited as set forth.

## FOURTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK STATE EXECUTIVE LAW

93. Plaintiff restates the foregoing allegations.

94. New York State Executive Law § 296(1)(h) provides that it shall be an unlawful discriminatory practice:

> For an employer . . . to subject any individual to harassment because of an individual's age, race, creed, color, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, status as a victim of domestic violence, or because the individual has opposed any practices forbidden under this article or because the individual has filed a complaint, testified or assisted in any proceeding under this article, regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims. Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories.  The fact that such individual did not make a complaint about the harassment to such employer, licensing agency, employment agency or labor organization shall not be determinative of whether such employer, licensing agency, employment agency or labor organization shall be liable.  Nothing in this section shall imply that an employee must demonstrate the existence of an individual to whom the

11

      employee's treatment must be compared.  It shall be an affirmative defense to liability under this subdivision that the harassing conduct does not rise above the level of what a reasonable victim of discrimination with the same protected characteristic or characteristics would consider petty slights or trivial inconveniences.

95. Defendants violated the section(s) cited as set forth.

FIFTH CAUSE OF ACTION FOR RETALIATION
<u>UNDER THE NEW YORK STATE EXECUTIVE LAW</u>

96. Plaintiff restates the foregoing allegations.

97. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

98. Defendants violated the section(s) cited as set forth.

<u>JURY DEMAND</u>

99. Plaintiff requests a jury trial on all issues to be tried.

WHEREFORE, Plaintiff respectfully requests a judgment against Defendants:

    A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.*, and the New York State Human Rights Law, New York State Executive Law § 290, *et seq.*, in that Defendants discriminated against Plaintiff based on Plaintiff's sex/gender and retaliated against Plaintiff for complaining of discrimination and wrongfully terminated Plaintiff;

    B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and conduct and to otherwise make Plaintiff whole for any losses suffered because of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to Plaintiff's reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices and conduct.

Dated: Rhinebeck, New York
August 28, 2023

*Nathaniel K Charny*
Nathaniel K. Charny (NC 5664)
H. Joseph Cronen (HC 4814)
Charny & Wheeler P.C.
42 West Market Street
Rhinebeck, New York 12572
T - (845) 876-7500
F - (845) 876-7501
ncharny@charnywheeler.com
jcronen@charnywheeler.com

Attorneys for Plaintiff