UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KATHARINE DOYLE,

                              Plaintiff,

              -v-

AMERICAN GLORY RESTAURANT CORP., *and*
JOSEPH FIERRO, *individually and in his official capacity*,

                              Defendants.

---

23 Civ. 7624 (PAE)

<u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

Plaintiff Katharine Doyle brings this action against her former employer American Glory Restaurant Corp. ("American Glory") and its owner Joseph Fierro.  She alleges that defendants subjected her to a gender-based hostile work environment and then retaliated against her when she complained about Fierro's conduct.  Doyle brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL").

Pending now is defendants' motion to dismiss Doyle's First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the Court predominantly denies the motion, granting it only as to Doyle's NYSHRL discrimination claim against Fierro.

## I.   Background[1]

### A.   Factual Background

#### 1.   The Parties

Doyle is a former employee of American Glory.  *See* FAC ¶¶ 18–20, 72.

American Glory is a restaurant in Hudson, New York.  *Id.* ¶ 18.  Fierro owns American Glory and was Doyle's supervisor throughout her employment.  *Id.* ¶¶ 15, 21.

#### 2.   Doyle's Employment at American Glory

In or around October or November 2020, American Glory hired Doyle in a part-time bartending role.  *Id.* ¶ 18.  In April 2021, she moved into a full-time role as American Glory's day manager, and, several weeks later, was promoted to assistant general manager.  *Id.* ¶¶ 19–20. Her employment at American Glory continued until July 2021, when she contends she was constructively discharged.  *Id.* ¶ 72.

Doyle alleges that she was subjected to both discrimination and retaliation throughout her employment.  The Court reviews the allegations as to each in turn.

##### a.   *Alleged gender-based hostile work environment*

The FAC pleads the following incidents and remarks that it alleges reflect gender-based discrimination in the American Glory workplace.

---

[1] The Court draws the facts in this decision principally from the First Amended Complaint, Dkt. 19 ("FAC").  *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").  For purposes of the motion to dismiss under Rule 12(b)(6), the Court accepts all factual allegations in the FAC as true, drawing all reasonable inferences in Doyle's favor.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

First, Fierro frequently made offensive remarks about Doyle's body. He "constantly commented on [Doyle's] body, on a daily basis identifying the shape and size of her breasts." *Id.* ¶ 34; *see also id.* ¶ 22 (Fierro "made repeated comments about [Doyle's] breasts"). "For example, he frequently said [Doyle] had 'big tits,' and did so as late as June 2021." *Id.* ¶ 35. "At least once, [Fierro] commented to [Doyle] that a patron's breasts were not as large as [Doyle's]." *Id.* ¶ 36. "On approximately five occasions, [Fierro] said that [Doyle's] breasts could serve as a draw for older men to patronize the Restaurant." *Id.* ¶ 37.

Second, Fierro frequently made offensive remarks about female customers and Doyle's female coworkers. "[O]n a daily basis," Fierro would "talk about female customers' breast[s] in detail." *Id.* ¶ 22; *see also id.* ¶ 26 ("Fierro would constantly comment about women, both employees and customers"). For example, Fierro once "commented that a bride who was using [American Glory] for catering had 'perfect melon tits.'" *Id.* ¶ 33. As to Doyle's coworkers, "[o]n one occasion, [Fierro] complained that" one of Doyle's colleagues "'has an ugly tit' that he saw when it was inadvertently exposed briefly while the employee was bending over." *Id.* ¶ 27. "Immediately after this employee bent over," Fierro "screamed, further cruelly humiliating the employee[,] who fled outside crying." *Id.* ¶ 28. Fierro later "complained to [Doyle] repeatedly that he 'could not get the image out of [his] mind.'" *Id.* ¶ 29. Fierro also "told [Doyle] on approximately two occasions in June 2021 that a young waitress had a 'nice ass.'" *Id.* ¶ 38.

Third, Fierro confronted Doyle with sexually explicit materials and inappropriate remarks related to sex. "Fierro would frequently talk to [Doyle] about sex." *Id.* ¶ 41. "For example, in June 2021, [Fierro] offensively boasted that women wanted to have sex with him because he had money." *Id.* ¶ 42. He similarly "boasted about how many discrimination suits he had pending, and that they were unfounded because, for example, he touched a woman's 'tit' and 'she should

have been happy since no one else wanted to touch it.'" *Id.* ¶ 39.  He also "repeatedly remotely displayed pornography on the reservation tablet at the Restaurant and repeatedly and knowingly exposed multiple employees, including several that were minors, to this pornography." *Id.* ¶ 40.

> ### b.    *Alleged retaliation*

The FAC pleads the following events that it alleges reflect retaliation by American Glory and Fierro based on Doyle's protected activity.

First, Fierro "would increase his sexist vitriol towards women in general and against [Doyle] in particular" whenever she complained about his offensive conduct—including, for instance, when she complained about Doyle's rants "about 'nigger' boyfriends and [say] that women who had 'nigger boyfriends' should be fired," *id.* ¶¶ 50, 54, or when she objected to Doyle's demand that she "fire [an employee] because [the employee] was pregnant," *id.* ¶¶ 23–24.  Specifically, Doyle would "increas[e] the frequency with which he used sex-/gender-based slurs such [as] 'bitch.'" *Id.* ¶ 54; *see also id.* ¶ 57 (Fierro would tell Doyle she "was acting like or being a 'bitch'").  "At times he would completely ignore [Doyle's] presence after she complained about his unlawful behavior." *Id.* ¶ 56.  "He would also retaliate against [Doyle] for objecting to his cartoonishly bigoted and unlawful behavior by publicly questioning [Doyle's] competence in bad faith," for instance by calling her "stupid," and by saying that she "could not get anything done." *Id.* ¶¶ 59–61.

Second, in July 2021, Fierro demoted Doyle, allegedly "to retaliate against her for complaining of discrimination." *Id.* ¶ 76.  Earlier that month, he had "berat[ed] her, scream[ed] at her, and call[ed] her . . . 'fucking retarded' and 'useless.'" *Id.* ¶ 69.

### 3.    Doyle's Termination

Doyle "decided not to return to the job in or around the end of July [2021] because she determined that she had been constructively discharged," in part as a result of the demotion. *Id.* ¶ 72; *see also id.* ¶¶ 75, 77 (alleging defendants "terminated" Doyle's employment). Earlier that month, Doyle had "attempted to take a medical leave," which American Glory refused, "despite [Doyle] suffering from a workplace injury." *Id.* ¶¶ 67–68. Nonetheless, Doyle took leave, and, while away, realized "that the extreme gender/sex based and retaliatory hostility in the workplace was causing her great mental anguish and that she simply could not return to the workplace." *Id.* ¶ 71. The FAC alleges that her "working conditions were so intolerable that a reasonable person in [her] position would have felt compelled to resign." *Id.* ¶ 73.

### B.    Procedural History

On August 28, 2023, Doyle filed an initial Complaint. Dkt. 1. On September 1, 2023, defendants moved to dismiss, Dkt. 15, and filed a memorandum of law in support, Dkt. 16. On September 2, 2023, the Court ordered Doyle to either amend her complaint or oppose the motion to dismiss by November 22, 2023. Dkt. 18. On November 22, 2023, Doyle filed the FAC. Dkt. 19. On December 6, 2023, defendants moved to dismiss the FAC, Dkt. 20, and filed a memorandum of law in support, Dkt. 21 ("Def. Br."). On January 5, 2024, Doyle opposed the motion. Dkt. 25 ("Pl. Br."). On January 12, 2024, defendants filed a reply. Dkt. 26 ("Def. Reply Br.").

## II.    Legal Standards Governing Motions to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief. *Twombly*, 550 U.S. at 558.  When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678.  Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III.    Discussion

### A.    Timeliness of Doyle's Claims

Doyle filed her Equal Employment Opportunity Commission ("EEOC") charge against American Glory on May 5, 2022. *See* Dkt. 22, Ex. 1 (letter of that date from Doyle's counsel to EEOC, attaching Doyle's discrimination charge).[2]  Defendants argue that Doyle's hostile work environment claim is time-barred, because the FAC does not allege discriminatory conduct within the 300 days preceding that filing, *i.e.*, between July 9, 2021 and May 5, 2022.  Def. Br. at 5–8.  Defendants are incorrect.

The FAC contains factual allegations regarding American Glory that straddle July 9, 2021.  When "a plaintiff's allegations of discrimination extend beyond the 300-day limitations period, the nature of the claim determines what consideration will be given to the earlier conduct." *Petrosino v. Bell Atlantic*, 385 F.3d 210, 220 (2d Cir. 2004).  "With respect to claims

---

[2] Defendants state that they do not concede this filing date, Def. Br. at 6, but do not explain their basis to dispute the accuracy of the date on Doyle's letter to the EEOC.

based on termination, failure to promote, denial of transfer, or refusal to hire, section 2000e–

5(e)(1) precludes recovery for discrete acts of discrimination or retaliation that occur outside the

statutory time period, even if other acts of discrimination occurred within the statutory time

period." *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (cleaned up).

 Where a claim alleges a hostile work environment, however, the continuing violation

doctrine applies, such that the limitations period does not commence to run "until the last

discriminatory act" is taken "in further of" a "broader unlawful practice." *Tassy v. Buttigieg*, 51

F.4th 521, 532 (2d Cir. 2022) (citation omitted). Although the doctrine does not save "'discrete

acts of discrimination or retaliation that occur[ed] outside the statutory time period,' even if other

acts of discrimination occurred within the statutory time period," *Patterson v. County of Oneida*,

375 F.3d 206, 220 (2d Cir. 2004) (quoting *Morgan*, 536 U.S. 101, 105 (2002)), a hostile work

environment claim is a paradigmatic "continuing violation," to which the doctrine applies, *see*

*Morgan*, 536 U.S. at 115–17. As the Supreme Court has explained:

> Hostile environment claims are different in kind from discrete acts. Their very
> nature involves repeated conduct. The 'unlawful employment practice' therefore
> cannot be said to occur on any particular day. It occurs over a series of days or
> perhaps years and, in direct contrast to discrete acts, a single act of harassment may
> not be actionable on its own.

*Id.* at 115 (citations omitted). As such, provided that Doyle's hostile work environment claim

encompasses at least one act within the limitations period (that is, on or after July 9, 2021), the

acts predating the limitations period are properly considered as part of her claim. *See McGullam*

*v. Cedar Graphics, Inc.*, 609 F.3d 70, 75–76 (2d Cir. 2010).

 Fairly reading the FAC, such is the case here. To be sure, a number of the allegations of

sexist statements and actions are not dated with specificity. But the FAC alleges recurrent—

indeed daily—behavior patterns of this nature. These include that Fierro "commented on

[Doyle's] body[] on a daily basis[,] identifying the shape and size of her breasts," FAC ¶ 34, and similarly spoke "daily" to Doyle "about female customers' breasts," *id.* ¶ 22. Courts in this District have found such allegations sufficient to plausibly plead a hostile work environment throughout the plaintiff's employment—which, as alleged here, ended within the limitations period. *See, e.g., Langford v. Int'l Union of Operating Eng'rs*, 765 F. Supp. 2d 486, 498 (S.D.N.Y. 2011) (on motion to dismiss, holding claim timely where complaint alleged that defendant subjected plaintiff to "abuse, hostility, . . . [and] sexually suggestive photographs . . . throughout her employment"); *Stathatos v. Gala Resources, LLC*, No. 06 Civ. 13138 (RLC), 2010 WL 2024967, at *7 (S.D.N.Y. May 21, 2010) (on motion to dismiss, holding claim timely where complaint alleged that defendant's "sexually charged behavior and offensive comments" occurred "every day"); *Drew v. Plaza Constr. Corp.*, 688 F. Supp. 2d 270, 279 (S.D.N.Y. 2010) (on motion to dismiss, holding claim timely where complaint alleged that defendant "directed profanity at [plaintiff] and raised his voice in a demeaning manner on a daily basis").

Defendants represent, factually, that Doyle was on leave from July 9, 2021 onward, such that it is impossible for an act that furthered a hostile work environment to have occurred within the limitations period. Def. Br. at 7. It is premature to resolve that issue. Although stating that Doyle went on leave in July 2021, the FAC does not place in time the date that Doyle's leave commenced; the FAC in fact pleads that she was forced to "continue coming to work in July[] 2021." FAC ¶ 68. In all events, the FAC alleges that the above-described behavior patterns persisted throughout Doyle's employment, which is pled to have continued until the end of July 2021. *See* FAC ¶¶ 72–76. Confining itself to the FAC's well-pled factual allegations, the Court must credit that Fierro continued to make sexually offensive comments along these lines after

July 9, 2021. *See Iqbal*, 556 U.S. at 673 (only question on motion to dismiss is "the sufficiency of [the plaintiff's] pleadings").

In any event, even if the pleadings had confined Fierro's offensive comments to Doyle to the period before July 9, 2021, Doyle's demotion and constructive termination—which the FAC pleads occurred at the end of July 2021, FAC ¶¶ 75–76—are plausibly viewed as acts of harassment in furtherance of the alleged hostile work environment. As a recent Second Circuit decision underscores, that Doyle's demotion and constructive termination are *also* discrete acts that might have supported a separate discrimination claim does not bar their being treated as acts furthering the hostile work environment. The Circuit held: "A discrete discriminatory act, such as termination, within the limitations period may not only support a claim for damages, it may also render a hostile work environment claim timely if it is shown to be part of the course of discriminatory conduct that underlies the hostile work environment claim." *King v. Aramark Services Inc.*, No. 22-1237, 2024 WL 1188985, at *9 (2d Cir. Mar. 20, 2024). Whether in fact Doyle's demotion and constructive termination were "part of [an] ongoing, discriminatory practice that created a hostile work environment"—such that her hostile work environment claim is in fact timely—cannot be resolved before summary judgment (and possibly not until trial). *Id.* The Court has no warrant now to dismiss Doyle's hostile work environment claim as untimely.

### B.    Hostile Work Environment

#### 1.    Applicable Legal Standards

Title VII "prohibits the creation of a hostile work environment" based on race, color, religion, sex, or national origin. *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013). To prevail on such a claim, a plaintiff must establish that

> the workplace is permeated with discriminatory intimidation, ridicule, and insult
> that is sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment. This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive.   The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.

*Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015) (internal quotation marks and citations omitted). "[A] work environment's hostility should be assessed based on the totality of the circumstances." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks omitted). Factors that may be considered include: "[1] the frequency of the discriminatory conduct; [2] its severity; [3] whether it is physically threatening or humiliating, or a mere offensive utterance; and [4] whether it unreasonably interferes with an employee's work performance." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Title VII "does not set forth a general civility code for the American workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). "[A] plaintiff alleging a hostile work environment must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Id.* At the motion to dismiss stage, however, a plaintiff need plead only that she was faced with "harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse"—a bar that the Second Circuit has "repeatedly cautioned against setting . . . too high." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003).

2.      **Application**

Defendants argue that the FAC's allegations as to American Glory's purportedly gender-based hostile work environment—in particular, as to Fierro's comments to Doyle—are too conclusory and general to state a claim.  Def. Br. at 9–13.

Defendants are incorrect.  The FAC alleges that Fierro "commented on [Doyle's] body[] on a daily basis[,] identifying the shape and size of her breasts," FAC ¶ 34, and would similarly talk "daily" to Doyle "about female customers' breasts," *id.* ¶ 22.  That these allegations are of recurrent behavior—that Fierro harassed Doyle daily at American Glory—does not entitle a court to disregard them at the motion to dismiss stage.  *Cf. Iqbal*, 556 U.S. at 681 (allegations of historical fact must be taken as true on a motion to dismiss, even if those allegations may be argued to be "unrealistic," "chimerical," and "extravagantly fanciful").  Critically, the FAC's allegations are about concrete behavior in the workplace.  They are far from the "formulaic recitation of the elements of a cause of action" that the Supreme Court has held may be set aside as conclusory.  *E.g.*, *Twombly*, 550 U.S. at 564–65 (defendants engaged in a "contract, combination or conspiracy"); *Iqbal*, 556 U.S. at 680–81 (defendants "knew of, condoned, and willfully and maliciously agreed to subject" plaintiff to harsh conditions of confinement).  The fact that defendants find it improbable that Fierro in fact commented on Doyle's and customers' breasts on a daily basis does not allow the Court to resolve Doyle's claims on the pleadings.  *Cf. Littlejohn*, 795 F.3d at 306 (under *Iqbal* and *Twombly*, at pleading stage, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor").

Taking the well-pled factual allegations in the FAC as true, the FAC plausibly pleads that Doyle was subjected to a hostile work environment.  "The required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the

conduct." *Trotta v. Mobil Oil Corp.*, 788 F. Supp. 1336, 1349 (S.D.N.Y. 1992) (cleaned up); *see also, e.g., King v. Board of Regents*, 898 F.2d 533, 537 (7th Cir. 1990) ("Although a single act can be enough, generally, repeated incidents create a stronger claim of hostile environment, with the strength of the claim depending on the number of incidents and the intensity of each incident." (citation omitted)). Here, the FAC specifies that *some* of Fierro's misconduct occurred on a more limited number of occasions. "On approximately five occasions," for instance, Fierro "said that [Doyle's] breasts could serve as a draw for older men to patronize the Restaurant." *Id.* ¶ 37. But Fierro also "repeatedly" displayed pornography on American Glory's "reservation tablet" and talked to Doyle about sex. *Id.* ¶¶ 40–41. Similarly, when Doyle complained, Fierro would sometimes tell her that she "was acting like or being a 'bitch.'" *Id.* ¶ 57. But, as noted, the FAC also alleges that Fierro made *certain* sexually offensive comments "daily"—notably, his remarks about Doyle's and customers' breasts. *See id.* ¶¶ 22, 34.

Complaints alleging harassing commentary of this frequency have widely been upheld as plausibly alleging a hostile work environment. *See, e.g., Sharp v. S&S Activewear, LLC*, 69 F.4th 974, 977 (9th Cir. 2023) (reversing grant of motion to dismiss where complaint alleged that coworkers and supervisors frequently "yelled obscenities [and] made sexually explicit remarks" to plaintiff, and "routinely play[ed]" offensive, "misogynistic" music throughout the workplace); *Massey v. Dorning*, 611 F. Supp. 3d 1301, 1315 (N.D. Ala. 2020) (denying motion to dismiss where complaint alleged that coworkers and supervisors "on a near daily basis" referred to women in the workplace as "whores," "prostitutes," and "bitches"); *Green v. N.Y.C. Transit Auth.*, No. 15 Civ. 8204 (ALC), 2019 WL 1428336, at *2, *5 (S.D.N.Y. Mar. 28, 2019) (denying motion to dismiss where complaint alleged that supervisor and coworkers called her a "bitch" on "several occasions" and supervisor often "sen[t] [her] obscene text messages and images");

12

*Perez v. Town of North Providence*, 256 F. Supp. 3d 139, 152 (D.R.I. 2017) (denying motion to dismiss where complaint alleged that supervisors "frequently" made "gender based comments," "routinely characterizing" her as a "slut[,] bitch, and whore"); *Pfeiffer v. Lewis County*, 308 F. Supp. 2d 88, 104–06 (N.D.N.Y. 2004) (denying motion to dismiss where complaint alleged that supervisors and coworkers referred to women as "bitches" and subjected plaintiff to "comments about [her] appearance" on "a daily basis"). Evidence of this nature has also been a basis for the denial of defense motions for summary judgment. *See, e.g.*, *Zeng v. N.Y.C. Hous. Auth.*, No. 22 Civ. 138, 2023 WL 4553416, at *3 (2d Cir. July 17, 2023) (reversing grant of summary judgment where plaintiff alleged "repeated incidents of abusive, discriminatory remarks" by supervisors who would sometimes call her a "fucking stupid bitch"); *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 811–12 (11th Cir. 2010) (en banc) (issue of fact existed whether environment was objectively hostile where coworkers regularly called women "whores," "bitches," and "cunts," and engaged in "vulgar discussions of women's breasts, nipples, and buttocks"); *Grazioli v. Genuine Parts Co.*, 409 F. Supp. 2d 569, 578 (D.N.J. 2005) (issue of fact existed whether environment was objectively hostile where supervisor commented on female employees' genitalia once a week or more and often called women "pussies" and "cunts"). The FAC thus sufficiently pleads comments that are "sufficiently continuous and concerted [as] to be deemed pervasive." *Carrero v. N.Y.C. Hous. Auth.*, 890 F.2d 569, 577 (2d Cir. 1989). And the commentary alleged was of a type classically actionable, as "a raft of case law establishes that the use of sexually degrading, gender-specific epithets, such as . . . 'bitch,' has been consistently held to constitute harassment based upon sex." *Franchina v. City of Providence*, 881 F.3d 32, 54 (1st Cir. 2018) (cleaned up); *see also Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263 (6th Cir. 2009) (issue of fact existed whether environment was objectively hostile where

coworkers routinely described women in sexist terms and called plaintiff a "bitch" and a "heifer" with "udders").

The cases cited by defendants are inapposite. Almost all were disposed of on summary judgment, at which point a plaintiff has the burden of adducing admissible evidence giving rise to a material issue of fact; at a motion to dismiss, by comparison, a plaintiff need only plead facts plausibly giving rise to an entitlement to relief. *See Patane*, 508 F.3d at 113 ("[T]o avoid dismissal under [Rule] 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse' . . . ." (quoting *Terry*, 336 F.3d at 148)). And the three cases defendants cite that arose on a motion to dismiss are easily distinguished. The first involved just three "insensitive" comments relating to the plaintiff's perceived sexual orientation during more than two years' employment. *Sanderson v. Leg Apparel LLC*, No. 19 Civ. 8423 (GHW), 2020 WL 7342742, at *6–7 (S.D.N.Y. Dec. 14, 2020). The second involved vague allegations that the plaintiff was "observed constantly" by his female manager, who "at times" would "touch his shoulders." *Carter v. Verizon*, No. 13 Civ. 7579 (KPF), 2015 WL 247344, at *1, *12 (S.D.N.Y. Jan. 20, 2015). And the third involved a single "belittling" comment and the assignment of "unspecified menial tasks" to the plaintiff. *Myers v. Doherty*, No. 21 Civ. 219 (PAE), 2021 WL 5599502, at *12–13 (S.D.N.Y. Nov. 30, 2021), *aff'd*, No. 21 Civ. 3012, 2022 WL 4477050 (2d Cir. Sept. 27, 2022). These cases are far afield from the daily flow of harassing remarks aimed at Doyle that the FAC alleges. Given these allegations, that the FAC may be sparse as to other particulars of Doyle's employment does not require dismissal under Rule 12(b)(6). *Cf. Fowler v. UPMC Shadyside*, 578 F.3d 203, 211–

14

12 (3d Cir. 2009) ("Although [the] complaint is not as rich with detail as some might prefer, it need only set forth sufficient facts to support plausible claims.").

The FAC states a claim for a hostile work environment in violation of Title VII. Because Title VII acts as a "floor" for the NYSHRL, *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 552–53 (S.D.N.Y. 2023), this ruling means that the FAC's identical claim under state law also necessarily survives.[3] The Court thus denies defendants' motion to dismiss Doyle's hostile work environment claims.

**C.    Retaliation**

**1.    Applicable Legal Standards**

In evaluating a retaliation claim under Title VII, "courts follow the familiar burden-shifting approach of *McDonnell Douglas Corp.*" *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). To establish a *prima facie* case of unlawful retaliation, a plaintiff must show "(1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action." *Gorzynski*, 596 F.3d at 110; *see also Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 391 (2d Cir. 2020). However, "at the initial stage of the litigation," a complaint

---

[3] In August 2019, the NYSHRL was amended to direct courts to construe the NYSHRL, like the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-502(a) *et seq.*, "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed." N.Y. Exec. Law § 300. This language thus liberalized the NYSHRL standards, bringing them closer to the standards under the more lenient NYCHRL. However, it is as yet unclear whether these two standards are co-extensive, or whether the NYSHRL requires something in between federal and local law for discrimination claims. *See Yost v. Everyrealm Inc.*, No. 22 Civ. 6549 (PAE), 2023 WL 2224450, at *11 (S.D.N.Y. Feb, 24, 2023). Because the Court finds that Doyle has pled enough to state a claim under the higher standards of the pre-amendment NYSHRL—which tracked Title VII—the Court does not have occasion here to parse the exact demands of the NYSHRL as amended.

need only "plausibly" allege each element of a *prima facie* case. *Littlejohn*, 795 F.3d at 311; *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (to survive a motion to dismiss, a complaint is "not required to plead a prima facie case . . . as contemplated by the *McDonnell Douglas* framework").

## 2. Application

Defendants do not dispute that the FAC plausibly alleges the first prong of a *prima facie* case. As alleged, Doyle engaged in protected activity—in objecting to Fierro's demand that she "fire [an employee] because [the employee] was pregnant," FAC ¶¶ 23–24, and in telling Fiero not to make "discriminatory comments," *id.* ¶ 50; *see also id.* ¶ 53 (Fierro would "comment[] frequently about 'nigger' boyfriends"). The parties dispute whether the FAC plausibly alleges the remaining two prongs.

As to the second prong—whether the FAC has plausibly alleged an adverse action—defendants argue that the FAC's allegations are too vague to plausibly state a claim. Def. Reply Br. at 6–7. That argument fails. At the least, Doyle's alleged demotion on July 31, 2021, FAC ¶ 76, is an action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination," *Burlington N.*, 548 U.S. at 57; *see also Vega*, 801 F.3d at 90. Defendant's response—that Doyle "*never returned to work*," such that the alleged demotion "never went into effect," Def. Reply Br. at 6 (emphasis in original)—is a non-starter on a motion to dismiss, as this factual representation exceeds the FAC's well-pled factual allegations. The FAC thus plausibly pleads adverse action.

As to the third prong—whether the FAC has plausibly alleged that American Glory was motivated by retaliatory intent, *Vega*, 801 F.3d at 90–91—defendants again fault the FAC as inadequately specific. Def. Reply Br. at 7–8. That presents a closer question, but ultimately this

16

claim survives.  Central here, although the FAC "is not as rich with detail as some might prefer," *Fowler*, 578 F.3d at 211–12, it adequately alleges that Doyle's demotion took place within three months of at least some of her protected activity (specifically, her refusal to fire a pregnant employee), *see* FAC ¶¶ 20, 23–24, 76.  On the pleadings, such temporal proximity gives rise to a plausible inference of retaliatory intent.  *See Gorzynski*, 596 F.3d at 110 ("Though [the Second Circuit] has not drawn a bright line defining, for the purposes of a *prima facie* case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, [it has] previously held that five months is not too long to find the causal relationship."); *see also, e.g.*, *Witcher v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 7750 (PGG) (SN), 2023 WL 2609342, at *14 (S.D.N.Y. Mar. 23, 2023) (inference of retaliatory intent plausibly pled where adverse action taken two months after protected activity); *Huda v. N.Y.C. Health & Hosps. Corp.*, No. 19 Civ. 11556 (AJN), 2021 WL 1163975, at *7 (S.D.N.Y. Mar. 26, 2021) (same where adverse action taken three and a half months after protected activity).  The FAC thus plausibly pleads retaliatory intent.

As such, the FAC states a claim for retaliation in violation of Title VII.  And because Title VII acts as a "floor" for the NYSHRL, *Johnson*, 657 F. Supp. 3d at 552–53, the FAC's identical claim under state law also survives.  The Court thus denies the motion to dismiss Doyle's retaliation claims.

### D.    NYSHRL Claims Against Fierro

Doyle asserts two claims against Fierro—one for discrimination, the other for retaliation.  Both arise under the NYSHRL.  The Court considers these in turn.

### 1.    Discrimination

The FAC brings a claim under N.Y. Exec. Law § 296(1)(h), which makes it unlawful "[f]or an employer" to discriminate based on an individual's protected characteristics.  FAC ¶ 111.  As the New York Court of Appeals clarified in *Doe v. Bloomberg L.P.*, 143 N.Y.S.3d 286, 292 (2021), where a corporate entity is the plaintiff's employer, an individual affiliated with the entity cannot himself qualify as the employer under the NYSHRL.  *See Nezaj v. PS450 Bar & Rest.*, No. 22 Civ. 8494 (PAE), 2024 WL 815996, at *6–7 (S.D.N.Y. Feb. 27, 2024) (discussing ramifications of *Doe* for NYSHRL claims).  That is so even if the individual holds a high post at the corporate employer or, as here, owns the entity.  *Doe*, 143 N.Y.S.3d at 291–92; *see also, e.g.*, *Harding v. Doriton Cap. Advisors LLC*, 635 F. Supp. 3d 286, 297 (S.D.N.Y. 2022) (under *Doe*, even "individual owners, officers, employees, or agents of a business entity" are not considered "employers" under the NYSHRL).  As such, because Fierro, the owner of American Glory, was not Doyle's employer for purposes of the NYSHRL, this claim must be dismissed.[4]

### 2.    Retaliation

The FAC next brings a claim under N.Y. Exec. Law § 296(7), which makes it unlawful "for any person . . . to retaliate or discriminate against any person because he or she has opposed any practices forbidden" under the NYSHRL.  FAC ¶ 114.  Unlike the NYSHRL's

---

[4] Under a different section of the NYSHRL, N.Y. Exec. Law § 296(6), an individual may be held liable for aiding and abetting the discriminatory conduct of an employer.  *See, e.g., Baptiste v. City Univ. of N.Y.*, No. 22 Civ. 2785 (JMF), 2023 WL 4266914 (S.D.N.Y. June 29, 2023) ("[Individual defendants] can be held liable under the state statute only on an aider-and-abettor theory."); *Bueno v. Eurostars Hotel Co.*, No. 21 Civ. 535 (JGK), 2022 WL 95026, at *7 (S.D.N.Y. Jan. 10, 2022) ("[U]nder the NYSHRL, individual employees may be liable for aiding and abetting discriminatory conduct."); *see also Doe*, 143 N.Y.S.3d at 288 n.1 (noting that scope of "aiding and abetting" liability was not at issue in that case).  Because neither the FAC nor the parties' briefs reference aiding and abetting liability, that theory is not implicated by this case. *See Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 83–84 (2d Cir. 2023) (aiding-and-abetting theory forfeited due to failure to assert it in complaint or in briefing before district court).

discrimination provision, which *Doe* has interpreted to apply only to "employers," this provision applies to "any person." *See Kwong v. City of New York*, 167 N.Y.S.3d 9 (1st Dep't 2022). As such, a business owner, like Fierro, can be held liable insofar as he "actually participate[d] in the conduct giving rise to" Doyle's retaliation claim. *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 367 (S.D.N.Y. 2012) (citation omitted).

Defendants argue that this state-law claim against Fierro fails for the "same reasons" the retaliation claim under Title VII against American Glory ostensibly fails. Def. Reply Br. at 9. The Court, however, has sustained that claim. Given that the FAC alleges that Fierro himself demoted Doyle, FAC ¶¶ 16, 76, this claim also survives defendants' motion to dismiss.

The Court thus grants defendants' motion to dismiss the FAC's NYSHRL discrimination claim against Fierro, but denies the motion to dismiss the NYSHRL retaliation claim against him.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss in part and denies it in part. Specifically, the Court dismisses Doyle's NYSHRL discrimination claim against Fierro, but otherwise denies the motion.

The Clerk of Court is respectfully directed to terminate all pending motions. By separate order, the Court will schedule a date for an initial pretrial conference.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: April 4, 2024
        New York, New York